## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELROSE, INC.,     )
           )
   Plaintiff,    )
           )
  vs.       )  Civil Action No. 02-1161
           )
CITY OF PITTSBURGH, CITY OF )  Judge Joy Flowers Conti
PITTSBURGH ZONING BOARD OF )
ADJUSTMENT, CLIFFORD B.  )  Magistrate Judge Amy Reynolds Hay
LEVINE, ESQ., REGIS D. MURRIN, )
ESQ., and JESSE W. FIFE, JR.,  )
           )
   Defendants.   )

## MEMORANDUM OPINION

CONTI, District Judge

Melrose, Inc. ("Melrose" or "plaintiff"), a Pennsylvania corporation engaged in the business of acquiring and leasing naming rights to buildings in Pittsburgh, Pennsylvania, filed suit alleging that defendants City of Pittsburgh (the "City"), City of Pittsburgh Zoning Board of Adjustment (the "Zoning Board"), Clifford B. Levine ("Levine"), Regis D. Murrin ("Murrin"), and Jesse W. Fife ("Fife," together with the City, the Zoning Board, Levine, and Murrin collectively "defendants") violated its First and Fourteenth Amendment rights by arbitrarily denying Melrose permits to display signs on buildings for which it held the naming rights. (Pl.'s Concise Statement of Undisputed Facts in Support of Its motion for Partial Summary Judgment ("Pl.'s Facts") ¶¶ 1, 4.) The denials were based upon the conclusion of the Zoning Board that the signs were not "bona fide Identification Sign[s]" within the meaning of the Pittsburgh Zoning Code, PITTSBURGH, PA., ZONING CODE § 919 (1999) (the "Zoning Code"), "but rather in the nature of creative plan or strategy of evasion to avoid the valid restrictions that [the Zoning Code] places upon Advertising Signs." (Pl.'s App. Ex. F at 238a.)

On April 14, 2003, this case was referred to a United States Magistrate Judge for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. §§ 636(b)(l)(A)-(B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrate Judges. On May 23, 2008, the magistrate judge issued a report and recommendation (Doc. No. 89 (the "R & R")) regarding the motion for summary judgment (Doc. No. 75) filed by defendants and the motion for partial summary judgment (Doc. No. 80) filed by the plaintiff. The magistrate judge recommended that the district court grant defendants' motion for summary judgment, and deny Melrose's motion for partial summary judgment. Service of the R & R was made on the parties. Objections (Doc. No. 90) were filed by Melrose on June 9, 2008, and a response to objections (Doc. No. 91) was filed by defendants on June 16, 2008. After a de novo review of the record including the plaintiff's objections, and defendants' response, the court will adopt in part and reject in part the magistrate judge's R & R as set forth below. Defendants' motion for summary judgment will be granted and plaintiff's motion for partial summary judgment will be denied.

Plaintiff avers three basic claims in the complaint based upon defendants' denial of five separate signage applications for buildings in the City. Plaintiff asserts the following two claims pursuant to 42 U.S.C. § 1983 ("section 1983"): 1) defendants allegedly deprived plaintiff of the First Amendment right to free speech by impermissibly limiting the content of its building identification signs; and 2) defendants allegedly deprived plaintiff of the Fourteenth Amendment right to equal protection of the laws by treating similarly situated entities in a more favorable manner. Plaintiff's third claim is brought pursuant to article 1, section 26 of the Pennsylvania Constitution by reason of defendants allegedly depriving plaintiff of rights granted under the equal protection clause of the Pennsylvania Constitution.

The court rejects the portion of the R & R finding plaintiff's proposed building names misleading. The court adopts all other portions of the R & R. Summary judgment will be

granted in favor of defendants with respect to plaintiff's section 1983 First Amendment claims, section 1983 Fourteenth Amendment Equal Protection Clause claims, and Pennsylvania constitutional claims brought pursuant to article 1, section 26 of the Pennsylvania Constitution.

For ease of reference the factual background, adopted in part from the R & R, will be addressed below.

## I. FACTUAL BACKGROUND

During the period from May 1998 to February 1999, Melrose executed lease agreements with the owners of five Pittsburgh buildings.[1]  (Pl.'s Facts ¶ 5.)  Each lease granted Melrose the right to name the building and to construct and display signage on the building reflecting that name.  (Pl.'s App. Ex. D at 205a-17a.)  The first lease granted Melrose naming rights to the premises located at 840 East Ohio Street, Pittsburgh, Pennsylvania, from May 27, 1998 until June 30, 2013.  (Pl.'s App. Ex. E at 30.)  On July 8, 1998, Melrose entered into a seventy-two month lease which granted Melrose the "authorization for property naming rights" for the building located at 568 Lincoln Avenue, Pittsburgh, Pennsylvania.  Id. at 42-43.  A third lease covering a fifteen-year term was executed on February 9, 1999, for the building located at 818 East Ohio Street, Pittsburgh, Pennsylvania.  Id. at 32.  A fourth eighteen-year lease gave Melrose the naming rights to premises located on West Carson Street, Pittsburgh, Pennsylvania.  (Def. App. Ex. L.)  The fifth lease executed by Melrose was a twenty-seven year lease which granted it "exclusive rights and appurtenances for the naming and/ or renaming of the property [located at 57 Bates Street, Pittsburgh, Pennsylvania]."  (Pl.'s App. Ex. D at 215a-17a). The leases did not limit the number of times or how often Melrose was entitled to change the buildings' names.

---

[1]

Melrose contends that it had entered into similar agreements with respect to other buildings, but did not attempt to place signs on those buildings in light of defendants' denial of the five applications discussed here.

In February 1999, Melrose filed applications for signage approval with the City' zoning administrator (the "Zoning Administrator"). (Pl.'s Ex. F at 243a). The application process was uneventful. (Pl.'s Facts ¶¶ 57-65.) The Zoning Administrator approved the names, location, size and shape of the signs for each of the applications.[2] (Def. App. Ex. F(f) at 1). All five buildings were in zoning districts where the Zoning Code generally prohibited advertising signs, but which permitted business signs and identification signs.[3] (Defs.' Concise Statement of Facts in Support of Motion for Summary Judgement ("Defs.' Facts") ¶ 5.)

The applicable section of the Zoning Code in effect at the time of these applications (section 919.01.C) distinguished among different kinds of signs, in relevant part, as follows:

> 2. **Advertising Sign** means a sign that directs attention to a business, commodity, service or entertainment, conducted, sold or offered:
>     (a) Only elsewhere than upon the premises where the sign is displayed; or (b) As a minor and incidental activity upon the premises where the sign is displayed.
>
> 3. **Business Sign** means a sign that directs attention to a business, profession, or industry located upon the premises where the sign is displayed; to the type of products sold, manufactured, or assembled; and/or to the service or entertainment offered on such premises; except a sign pertaining to the preceding if such activity is only minor and incidental to the principal use of the premises.
>
> 4. **Identification Sign** means a sign used to identify the name of the individual or organization occupying the premises; the profession of the occupant, the name of the building on which the

---

[2] Although the sign size and shape designations for identification signs changed before the subsequent applications for name changes at issue here, the size and shape of the proposed signs relating to the signage approved in the February 1999 applications were "grandfathered" into the regulations and are not at issue here. (Defs.'App. Ex. F(4) at 60-61.)

[3] Although defendants claim that the Zoning Code bans all advertising signs, the definition of "Advertising Signs" under the Zoning Code is limited to "off-site" advertising signs. Plaintiff maintains that some advertising signs are permitted in the applicable zones, but they are more strictly limited and regulated than identification signs. (<u>See</u> Pl.'s Response to Defendants' Statement of Facts ¶ 5.)

> sign is displayed; or the name of the major enterprise or principal
> product or service on the premises.

PITTSBURGH, PA., ZONING CODE § 919.01.C (1999);(Pl.'s App. Ex. A at 3a-4a.) Under the

Zoning Code, advertising signs, regulated pursuant to section 919.02 of the Zoning Code, were

subject to more rigorous requirements with respect to location, placement, size, and shape than

were non-advertising signs, which were regulated pursuant to section 919.03 of the Zoning Code.

Id. § 919.

 The Zoning Administrator approved a sign that read "Ram Staiger" for the premises at

840 East Ohio Street as an identification sign. "Ram" was a business's name. Staiger was the

building owner's name. (Defs.' App. Ex. F(5) at 5.) The premises at 818 East Ohio Street were

named "Caskey Limited" after a girlfriend of a Melrose officer, and an identification sign with

that name was approved for the premises. (Defs.' App. Ex. F(3) at 10.) Melrose's application

for a building identification sign at the West Carson Street premises identifying "Three Rivers

Building" as the name of the building was approved, as was the request for an identification sign

at 57 Bates Street designating "The Cole Building" as the name of the building. The Cole

Building was named for the son of a Melrose officer. (Defs.' App. Ex. F(5) at 14.) Melrose

constructed and installed signs reflecting the assigned names.[4]

On March 21, 2001, Melrose submitted applications to the Zoning Administrator to

rename the five buildings and change the signage. (Pl.'s App. Ex. E at 218a-34a.) Melrose

proposed that The Cole Building be renamed "WEHIRENURSES.COM BUILDING," that the

SSPP and Caskey Limited buildings be renamed "PALEGALHELP.COM" and that the name of

---

[4]
    The name "SSSP," which purportedly stood for South Side Parking Authority, an off-site
business with which Melrose's president had a connection, was placed on signage erected on the
building at 1025-33 Beaver Avenue. (Defs.' App. Ex. F(4) at 5.)

the Ram Staiger building be changed to "BARUCH ATAH HASHEM."[5]  (Id.)  Melrose also submitted a signage application for the Three Rivers Building, but did not specify in the application a new name for that building.  (Id.)  Melrose did not propose in any of the March 21, 2001 applications to change the location, size or shape of the identification signs on the buildings; it sought only to change the content of the signs to reflect the new names by changing the vinyl front face of the signs.  (Defs.' App. Ex. F(4) at 1-2.)

The Zoning Administrator notified Melrose that each of its name change requests was denied because the proposed signs constituted advertising rather than identification.  (Pl.'s Facts ¶¶ 71-85.)  On April 18, 2001, Melrose appealed the Zoning Administrator's decisions to the Zoning Board.  (Id. ¶ 87.)  The five cases were consolidated, and hearings were held on May 24 and June 21, 2001.  (Defs.' App. Ex. A at 1.)  The parties stipulated that the testimony and evidence produced in each individual case would be applicable to all Melrose's cases. (Defs.' App. Ex. F(1) at 5).  On December 7, 2001, the Zoning Board issued five decisions denying Melrose's five appeals.  (Pl.'s App. Ex. 5 at 238a-61a.)

Melrose's proposals to rename two of the buildings "PALEGALHELP.COM" and another "WEHIRENURSES.COM BUILDING" were rejected because the Zoning Board found that the proposed signs were not bona fide identification signs.  The Zoning Board concluded those proposals were "in the nature of a creative plan or strategy of evasion to avoid the valid restrictions which Chapter 919 place[s] upon advertising signs." (Pl.'s App. Ex. F at 244a.)

Some exceptions to the Zoning Code had been previously granted with respect to identification sign applications which met the definition of advertising signs.  Signs identifying the building names of Heinz Field, PNC Park, Mellon Arena, and I.C. Light Amphitheater (which

---

[5]     "Baruch Atah Hashem" is a Hebrew phrase meaning "Blessed is God."  (Pl.'s Facts ¶ 83.)

later changed its name to Chevrolet Amphitheater) were approved by the Zoning Board as identification signs despite their substantial interest in off-site advertising.  (Pl.'s Facts ¶¶ 99-101.)  None of the businesses identified in those names conducted substantial business on-sight and their signage on the buildings would not qualify for on-site advertising signs or for business identification signs as described in the Zoning Code.

The process for approval of the signage of those buildings is exemplified by the application for the Heinz Field name.  In 2001, Pittsburgh Steelers Sports Inc. (the "Steelers") applied for approval of 47 various identification signs.  The signs identified the newly erected football stadium as Heinz Field pursuant to a marketing and naming rights agreement between the Steelers and the H. J. Heinz Company.  (Defs.' App. Ex. C at 5.)  The Steelers also applied for approval for various signs identifying a portion of the stadium as the Coca-Cola Great Hall pursuant to a marketing agreement between the Steelers and the Coca-Cola Corporation.  (Id.)  The Zoning Administrator denied the Steelers's applications for 19 of the proposed signs including the proposal for the Coca-Cola Great Hall, and the Steelers appealed those decisions to the Zoning Board.

Several local community groups objected to the proposed signage, including the Allegheny West Civic Council, and on August 9, 2001, a hearing was held before the Zoning Board.  (Id.)  In a decision dated November 15, 2001, the Zoning Board approved the Steelers's application for the Heinz Field signs as identification signs, but denied the application for the Coca-Cola Great Hall signs.  (Id. at 12.)  The Zoning Board did not allow the signs with the Coca-Cola Great Hall lettering because the signs would constitute advertising signs and "Great Hall" was not the name of the building.  (Id. at 17.)  Through previous and subsequent negotiations and correspondence among the Steelers, the Sports and Exhibition Authority, the city planning commission, and members of the Zoning Board, the Steelers were successful in

having the Zoning Code amended in 2002 to allow the Coca-Cola Great Hall signage. (Pl.'s Facts ¶ 92.) Melrose did not receive the same cooperation from city officials or the Zoning Board. (Pl.'s Facts ¶ 98.)

In its decision approving the Heinz Field signs and categorizing the signs as identification signs rather than advertising signs the Zoning Board acknowledged the advertising aspect inherent in naming rights:

> Heinz is spending $57 million dollars to obtain stadium naming rights and related endorsements. The very rationale for purchasing naming rights of a sporting facility is to obtain name identification that will sustain or increase market share. We thus recognize that there is an advertising component inherent in the sale of naming rights.

(Defs.' App. Ex. H at 10.) Distinguishing between "genuine" identification signs which have an advertising component and advertising signs that do not qualify as identification signs, the Zoning Board - approximately four months prior to its denial of Melrose's March 21, 2001 applications - identified criteria to be considered in an interim decision dated August 15, 2001:

> First - One of its major purposes of or result of a sign must be to establish a destination point that will be generally recognized by the public as being at a specific geographical location.

> Second - Such established location must be important to or of interest to a material segment of the public whether the designated facility is one of culture, art, architecture, sports, office, business or other commercial or nonprofit uses.

> Third - there must be evidence of intended longevity of the sign adequate to sustain the designated point concept. It can not be as transitory as a commercial billboard. However, it need not be immune from unexpected, unforeseen or unwelcome circumstances that might result in a termination.

> Fourth - Either the owner of the facility or a principal user thereof should be in control of the destiny of any such sign rather than having control turned over to some third party.

(Interim Decision in Zoning Case 85 of 2001, the matter involving construction of signage at Heinz Field ("Interim Decision") at 10-11(emphasis added).)  The Zoning Board cited these criteria in its decisions in the Melrose cases.  (See Defs.' App. Exs.  A-E.)

The Zoning Board expressed concern with the longevity requirement of the third criteria in the decisions relating to Melrose's March 21, 2001 applications[6] and noted that "transfer of the building identification rights and the signs reflecting same to a third party who may change such identification for commercial purposes when and so often as it desires," was inconsistent with the purpose of building identification signs - directing the public to a specific geographical location. (Pl.'s App. Ex. F at 244a.)  While conceding that the Zoning Code does not restrict a property owner's right to select a building name, the Zoning Board held that when a building identification sign conflicts with the City's proper regulation of signs, "the Zoning Board is obligated to consider the intention of City Council in formulating Chapter 919 of the Zoning Code in its entirety."  (Id. at 243a.)  The Zoning Board  stated that failure to adhere to these criteria:

> would thwart the intention of Council reflected in Code §§919.01A.11 and 12 which "recognize that advertising  signs are a legitimate advertising medium to be placed  in the locations which neither lessen the visual attributes of the City through the placement of such signs, nor cause confusion, safety problems or lessen the ability to identify local businesses through visual clutter; [and to] regulate advertising signs or billboards within the City in the interests of economic prosperity, civic pride, quality of life and general welfare of the people who reside in, are visiting, are employed in or conduct business in the City."

---

[6]     Much of the Zoning Board's opinion, and a large percentage of the oral questioning, dealt with whether there was any relationship between the name of the building and any tenant or business located in the building.  This inquiry is irrelevant to the applications in question, because Melrose was not applying for signage under the "business sign" or on premises business identification provisions of the Zoning Code.  Melrose was applying for signage under the building identification provision of the Zoning Code.

(Id.)  The Zoning Board found the Melrose applications to be for  improper building

identification signs because:

> (1) the sign content was limited to web addresses for profit-making
> ventures; (2) the proposed name for the building had  "no
> relationship to the owner or to any tenant [or enterprise located]
> within the building;" (3) the sign was intended to direct readers to a
> for-profit website business; (4) neither the owner nor any principal
> tenant of the building exercised control over the sign or its content;
> and (5) there was no indication that the name assigned to the
> building would remain in place for any length of time.

(Id.  at 244a (emphasis added).)

Melrose presented no evidence that the names for the buildings in issue would remain the

same for any substantial period of time.  The only indication of the length of time that Melrose

intended to keep the names for the buildings and the relevant signage the same came during this

brief exchange at the hearing:

> Board Member Levine: Do you plan to change the name of the
> building from time to time?
> Counsel for Melrose: We might from time to time.
> Board Member Levine: And really, under your theory, there is no
> limit.  Because any name that you might want to name it, you have
> the right to name it because you own that part of the building or at
> least.
> Counsel for Melrose: Just as I can call my building Nernberg
> Building, 301 Smith Street Building, the Legal Services Building,
> or any other name that I want to put on it. Unless Heinz objects to
> me calling it the Heinz Building, I would have the right to name
> that building in any way I want.  If I want to name it after my
> great-grandmother or name it after - my wife's first name or
> anything else that I want to do, in short, yes, we have an absolute
> right to name the building any way we want, and especially under
> the ordinance, and that is the crux of  the issue.

(Defs.' App. Ex. F(2) at 33.)  In contrast the Zoning Board in the decision approving the

Steelers's application noted: "The Steelers entered into a 'Sponsorship Agreement' with the H. J.

Heinz Company . . . whereby the name of the football stadium would be known as 'Heinz Field'

for a period of at least 20 years."  (Pl.'s App. Ex. G at 302a.)

The Zoning Board also rejected Melrose's application to change the name and signage on one of the buildings to "BARUCH ATAH HASHEM" for substantially the same reasons that the other applications were denied. (Defs.' App. Ex. B at 4.) The City sent a letter to the Zoning Board advising the Zoning Board that there was no legal basis to reject the application for "BARUCH ATAH HASHEM" because it had no advertising component and was a valid building name. (Pl.'s App. Ex. E at 235a.) The Zoning Board denied the application without addressing the City's position. (Id. at 236a.) When the Zoning Board denied the name change, however, it recognized that there were constitutional issues relating to the religious message of the sign, and invited Melrose to reapply free of charge and brief the constitutional implications raised by this application. (Id.)

The Zoning Board's fifth decision addressed Melrose's application to change the name on one of the building signs without designating the new name. Stating that "the Zoning Administrator should not have made a decision or determination as to the subject application until it was completed . . . ," the Zoning Board remanded this case to the Zoning Administrator in order for Melrose to submit an amended application. (Defs.' App. Ex. D at 3.) Melrose did not pursue this case and the issue concerning that application is not before this court.

## II. STANDARD OF REVIEW

The Federal Magistrate Judges Act, 28 U.S.C. §§ 631 *et seq.*, establishes the standard which governs this court's review of a report and recommendation filed by a magistrate judge. The relevant statutory language provides:

> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge

may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

Because the R & R at issue concerns a motion for summary judgment, the court must proceed with the applicable summary judgment standard in mind. Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court is to draw all reasonable inferences in favor of the nonmoving party. El v. Southeastern Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007)("In considering the evidence, the court should draw all reasonable inferences against the moving party."). The United States Court of Appeals for the Third Circuit has stated:

> [I]f there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted. Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will.

Id.

# III.  DISCUSSION

Plaintiff raised several objections to the R & R.  Plaintiff claims the magistrate judge erred by: 1) misapplying the four-part Central Hudson test; 2) not granting partial summary judgment for at least the "Baruch Atah Hashem" application which is not advertising; 3) improperly rejecting Melrose's as applied vagueness challenge to the ordinance; 4) improperly applying principles of statutory construction in interpreting the ordinance; 5) improperly analyzing plaintiff's procedural due process claim; and 6) failing to note the lack of response by defendant to plaintiff's concise statement of facts.  Each objection will be addressed.  The court will also consider, assuming one of Melrose's claims could survive summary judgment, whether the individual defendants are entitled to immunity and should be dismissed from this case.

## A.  PLAINTIFF'S OBJECTIONS

### 1.  Whether the Magistrate Judge Misapplied the Central Hudson Test

The parties do not dispute that the applications for the names "PALEGALHELP.COM" and "WEHIRENURSES.COM BUILDING" implicate pure commercial speech and that the test articulated by the Supreme Court in Central Hudson Gas & Electric Corp. v. Public Commission of New York, 447 U.S. 557, 566 (1980), set forth the legal framework for assessing content-neutral restrictions on pure commercial speech.  Under Central Hudson, courts evaluating restrictions on commercial speech must determine whether: (1)  the speech at issue concerns lawful activity and is not misleading; (2) the asserted governmental interest is substantial; (3) if the first two criteria are met,  the regulation directly advances the governmental interest asserted; and (4)  the regulation is no more extensive than necessary to serve that interest. This test applies "to restrictions on commercial speech even in cases of alleged viewpoint discrimination."  Eller Media Co. v. City of Oakland,  No. C 98-02237, 2000 WL 33376585, at

*4 (N.D. Cal. Dec. 7, 2000) (citing Greater New Orleans Broadcasting Ass'n v. United States, 527 U.S. 173, 184 (1999)).

Plaintiff objected to the magistrate judge's application of the first, third and fourth prongs of the Central Hudson test with respect to the change of the building names to "PALEGALHELP.COM" and "WEHIRENURSES.COM BUILDING." Specifically, plaintiff argues that the magistrate judge erred by: finding the proposed names "misleading," finding that the ordinance directly advanced the governmental interest asserted, and finding that the ordinance was no more extensive than necessary to advance the government interest. Each argument will in turn be addressed.

### a. Whether the Proposed Names Were Illegal or Misleading

Melrose disagrees with the magistrate judge's recommendation that this court find that Melrose's proposed building names "PALEGALHELP.COM" and "WEHIRENURSES.COM BUILDING" were misleading as a matter of law under the first prong of the four-part test set forth in Central Hudson. The court agrees with plaintiff that those proposed building names were not illegal or misleading as required under the first prong of the Central Hudson test.

The first prong of the Central Hudson test requires that "the speech at issue concerns lawful activity and is not misleading." Central Hudson, 447 U.S. 566. The evidence of record shows that Melrose owns the buildings or has a contract with the owners of the buildings to name and put the building names on a sign. There were no allegations or intimations that the proposed signs infringed any copyright or trademark laws or that they violated any obscenity or similar laws that might apply to commercial speech. The signs did not advocate any illegal activity.

There was no evidence that the signs would be misleading or somehow constitute deceptive advertising. Inherent in the business of naming a building is the possibility that there may be confusion when a sign is erected identifying a building or venue for the first time when

14

the name is not necessarily associated with any activities going on in the building. This confusion is the same whether the name is Heinz Field, PNC Park, Mellon Arena, PPG, Gateway Towers, Gateway Center, Law and Finance, or WEHIRENURSES.COM BUILDING. After a sign identifying the building is displayed to the public for a period of time, however, the public will come to associate the name with the building and any confusion will be assuaged. No reasonable jury could conclude that this somewhat minor level of confusion rises to the level of deception contemplated by the Court in <u>Central Hudson</u>. <u>Central Hudson</u>, 447 U.S. at 563 ("The government may ban forms of communication more likely to deceive the public than to inform it.").

This conclusion does not change the outcome for any of plaintiff's claims. After recommending a finding that the signs were misleading as a matter of law, the magistrate judge declined to truncate the <u>Central Hudson</u> analysis based upon the first prong of the test, and evaluated each of the remaining <u>Central Hudson</u> factors assuming that the first prong was met.

**b. Whether the Ordinance Directly Advanced the City's Asserted Interest**

Melrose argues that the magistrate judge failed to analyze fully the third step of the <u>Central Hudson</u> test. The magistrate judge devoted nearly half of the R & R to this issue. The third step of the <u>Central Hudson</u> test requires that: "if the first two criteria are met, the regulation directly advances the governmental interest asserted." <u>Id.</u> In analyzing the third <u>Central Hudson</u> factor, the R & R explained the neutral criteria articulated by the Zoning Board to differentiate building identification signs from advertising signs. It can not be disputed that the City has a substantial interest in limiting the proliferation of signs in any particular zone in the City and in the public being able to identify a building name with a particular location. In the areas in question in Melrose's applications, the City chose to meet those interests by either severely

limiting or banning off-site advertising signs and imposing limitations for building identification signs.

When the Zoning Board was faced with a situation where a proposed sign could be considered an advertising sign or a building identification sign, the Zoning Board articulated several criteria which were relevant to advance the City's interest in maintaining the purpose of building identification signs - identifying a particular building with a name in order for the public to associate a name with a particular geographic location. None of these criteria was dependant upon the message of the name, the source of the message or the viewpoint represented. The single criterion that distinguished Melrose's signs from signs such as those posted at PNC Park, Mellon Arena, and Heinz Field was the longevity requirement. While Melrose is free to name a building "WEHIRENURSES.COM BUILDING" or "PALEGALHELP.COM," it must make a commitment to keep the name on the relevant sign for some period of time sufficient for the public to identify the building's name with its location. This requirement directly advanced the City's interest in having the public associate a particular name with a building or location without favoring any particular viewpoint or message. This requirement also advanced the City's interest in limiting the proliferation of signs in general and advertising signs in particular.

### c.  Whether the Regulation Was More Extensive than Necessary

The fourth prong of the Central Hudson test requires that "the regulation is no more extensive than necessary to serve [the government's asserted] interest." Central Hudson, 447 U.S. at 566. Melrose contends that the magistrate judge "converted the relevant question from 'was the regulation broader than necessary' to 'whether the regulation was reasonable.'" (Pl.'s Objections to the R & R ("Pl.'s Objs.") at 17.) The relevant case law makes clear that the magistrate judge did not convert the test. In Central Hudson, the Court defined the fourth prong inquiry as whether the speech restriction is "more extensive than necessary to serve" the interests

that support it.  Central Hudson, 447 U.S. at 566. In Board of Trustees of the State University of

New York v. Fox, 492 U.S. 469, 480 (1989),  the Court clarified that the fit between speech

regulation and the governmental interest need not be perfect, only "reasonable."

Melrose next challenges the magistrate judge's "astounding assertion" that Melrose had

not suggested what lesser burden on commercial speech might have been imposed.  (Pl.'s Objs.

at 17.)  A close reading of plaintiff's brief shows that Melrose *did* suggest imposition of a lesser

burden:  it suggested that its speech not be regulated at all.  "[S]igns that satisfied the Advertising

Sign definition, but that did not contain a building name could have been restricted without

concern for vagueness or viewpoint discrimination."  Id.  This argument was fully considered and

rejected by the magistrate judge.  This court does not find any error in the magistrate judge's

application of the fourth prong of the Central Hudson test with respect to Melrose's applications

for the building names "WEHIRENURSES.COM BUILDING" and "PALEGALHELP.COM."

**2.  Whether the Application for 840 East Ohio Street - "Baruch Atah Hashem"
Should Have Been Approved**

Plaintiff asserts that partial summary judgment should be granted in favor of plaintiff for

the "Baruch Atah Hashem" signage because it was a religious message and did not constitute

advertising under the Zoning Code.  The magistrate judge noted that the Zoning Board invited

Melrose to reapply free of charge if it wanted to further brief the issues raised  by this application

for 840 East Ohio Street.  Melrose did not reapply, but sought review of the denial of the

application in this court.  In its objection, Melrose cited evidence which it claimed showed that

appropriate administrative remedies were not available.  Melrose cited correspondence between

the City (through its solicitor) and the Zoning Board (co-defendants in this case) which reflected

that the City advised the Zoning Board that there was no legal basis to reject the application for

"BARUCH ATAH HASHEM" because it had no advertising component and was a valid

building name. (Pl.'s App. Ex. E at 235a.)  The Zoning Board denied the application without addressing the City's position.  (Id. at 236a.)  The court notes that the correspondence between the City and the Zoning Board took place before the Zoning Board's decision on the application. In its decision, the Zoning Board noted the unique constitutional implications raised because of the religious message involved, but declined to reach the constitutional issues without proper briefing.

Because Melrose did not reapply, the Zoning Board did not reach the merits of the constitutional claim.  Under those circumstances, the court cannot guess what the Zoning Board's decision would have been if Melrose had reapplied.  The Zoning Board admitted that the message "Baruch Atah Hashem" was not a commercial message and did not qualify as an advertising sign, but it quoted at length portions of the other Melrose decisions distinguishing advertising signs from building identifications signs.  It is not clear from the Zoning Board's decision whether the decision was 1) content based - the proposed signage was invalid as a building identification sign, because it contained a religious message - or 2) content neutral - the proposed signage was invalid as a building identification sign, because it lacked the same longevity requirements as the other applications.  This distinction is important because the standard to be applied for noncommercial speech, such as that implicated with the name "Baruch Atah Hashem," is different from the standard for commercial speech.  Rapa v. New Castle County, 18 F.3d 1043, 1053 (3d Cir. 1994).  If the Zoning Board's decision was content based the court must apply a strict scrutiny standard and the Zoning Board must show that the "'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" Id.  (quoting Boos v. Barry, 485 U.S. 312, 321 (1988)).  If the Zoning Board's decision was content neutral, the Zoning Board can institute reasonable time, place or manner restrictions which are "'narrowly tailored to serve a significant governmental interest,'" and

"'leave open ample alternative channels for communication of the information.'" Id. at 1054

(quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)).  Because

Melrose did not reapply - as it was invited to by the Zoning Board - and the Zoning Board did not

reach these issues, Melrose's objections to the Zoning Board's decision concerning the

application for signage at 840 East Ohio Street, Pittsburgh, Pennsylvania is not properly before

this court.

### 3.  Whether the Zoning Code's Definition of "Building Identification Sign" is Overly Vague

Melrose argues that the magistrate judge improperly rejected Melrose's as applied

vagueness challenge to the term "Building Identification Sign."  This court agrees with the

magistrate judge that the Zoning Code's definition for building identification signs was not

unconstitutionally vague on its face or as applied.

A statute may be invalidated if it fails to provide the kind of notice that will enable

ordinary people to understand what conduct it prohibits or if it authorizes or encourages arbitrary

and discriminatory application.  City of Chicago v. Morales, 527 U.S. 41, 56 (1999).  "A statute

is void for vagueness if it forbids the doing of an act in terms so vague that persons of common

intelligence must necessarily guess at its meaning and differ as to its application." ACLU v.

Ashcroft, 322 F.3d 240, 268 n. 37 (3d Cir. 2003) (citing Connally v. General Const. Co., 269

U.S. 385, 391 (1926)).  A statute is not vague because of the possibility that it may be difficult to

determine whether the fact in question has been proven, but would be vague because of "the

indeterminacy of precisely what that fact is." United States v. Williams, 128 S. Ct. 1830, 1846

(2008).  For a plaintiff to succeed in proving a statute is overly vague, the plaintiff must establish

that the statute did not provide "fair notice of what is prohibited, or is so standard less that it

authorizes or encourages seriously discriminatory enforcement." Id. at 1845.

In this case, plaintiff claims that the criteria relied upon by the Zoning Board in upholding the denial of Melrose's proposed signage were unconstitutionally vague. Specifically, plaintiff contends that the requirement that "there must be evidence of intended longevity of the sign adequate to sustain the designated point concept" is unconstitutionally vague. Nowhere in the ordinance is there a requirement that a building identification sign must be posted for a certain length of time or how long it would take to "sustain the designated point concept." Plaintiff claims that this lack of specificity encourages subjective and discriminatory application of the statute and points to the approval of the Steelers's proposed signage for Heinz Field as an example of the Zoning Board applying the statute unfairly in favor of large and popular corporations. This court disagrees. When a building identification sign also qualifies as an advertising sign, the Zoning Board set forth appropriate criteria to determine whether the identification purpose predominates over the advertising purpose. In applying a longevity requirement, the Zoning Board specified that, "[I]f can not be as transitory as a commercial billboard. However, it need not be immune from unexpected, unforeseen or unwelcome circumstances that might result in a termination." (Interim Decision at 11.) There is no requirement that a statute must set forth a bright line test or mathematical formula in order to pass constitutional muster. In setting forth specific criteria, the Zoning Board clarified how the ordinance would be applied. In this case, the Zoning Board's criteria gave plaintiff fair notice about what the ordinance required. Plaintiff chose not to reapply and include appropriate commitments regarding the intended longevity of the building names. The Zoning Code as applied was not unconstitutionally vague.

**4. Whether the Magistrate Judge Correctly Applied Principles of Statutory Construction**

Melrose alleges that the magistrate judge failed to follow the holding in <u>Fidler v. Zoning Board of Adjustment of Upper Macungie Twp</u>., 182 A.2d 692, 693 (Pa. 1962). Melrose summarizes that holding as follows:

> [Restrictions imposed by zoning ordinances are in derogation of the common law and must be strictly construed . . . .Such restrictions must not be so construed as to fetter the use of land by implication. The permissive widest use of the land is the rule and not the exception, *unless specifically restrained in a valid and reasonable exercise of the police power.*

<u>Id.</u> (emphasis added) (internal citations omitted).

This argument misapprehends the role of the federal court in this case, which is to evaluate Melrose's constitutional claims. This court does not supplant the role of the Pennsylvania courts which may determine whether the Zoning Board complied with or properly interpreted applicable ordinances or properly observed state law in evaluating restrictions imposed by zoning ordinances. This court looks exclusively at whether the actions taken by the Zoning Board transgressed Melrose's constitutional rights as alleged in its complaint.

The magistrate judge evaluated the alleged state and federal constitutional violations against the background of the record, and, in concluding that Melrose's rights had not been violated, thoroughly explained the rationale for the recommendations. The magistrate judge's analysis did not depend upon a construction of a state statute. The court's task is to determine whether the statutory construction applied by the Zoning Board, and the reasons underlying its disposition of the Melrose cases rose to the level of a constitutional violation. They did not. Whether there may have been some other violation of state law  was not raised in the complaint. Under those circumstances, this court need not consider this objection.

## 5.  Whether the Procedural Due Process Claim was Improperly Rejected

Melrose contends that the magistrate judge's brief treatment of its procedural due process claim was contrary to law and logic.  In reality, the due process claim need not have been addressed at all.  Plaintiff failed to raise a procedural due process claim in its complaint or in any document filed over the next five years.  The issue was first raised, almost as an afterthought, in its Memorandum of Law in Opposition to Defendants' Summary Judgment Motion (Doc. 87 at 11.)  Melrose wrote: "The focus of Defendants' due process discussion is on substantive due process.  They fail, however, to address procedural due process." (Id.)  Presumably, defendants did not address that argument because it had not been raised.

It is well established that a plaintiff may not attempt to amend a complaint through a brief in opposition to a motion for summary judgment.  See  Sgro v. Bloomberg L.P., Civ.No. 05-731, 2008 WL 918491, at *18 n.16 (D.N.J. Mar. 31, 2008) (citing Bey v. Daimler Chrysler Serve. of N. Am., LLC, No. 04-6186, 2006 WL 361385 *33 (D. N.J. Feb. 15, 2006) ("claims [that] were not alleged in the complaint cannot be raised for the first time in opposition to a motion for summary judgment"); see, e.g., Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)."); Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir.1990)).  This issue is not properly before the court.

**6.  Whether Defendants' Failure to Respond to Plaintiff's Concise Statement of Undisputed Facts was Dispositive**

Plaintiff correctly notes that the magistrate judge failed to address defendants' failure to file a responsive concise statement as required by this district court's Local Rule 56.1.C, and that, as a result, the court may deem plaintiff's statement of material facts undisputed.  W.D.PA.L.R. 56.1.E; see, e.g., Bronson v. White, Civ. No. 05-2150, 2007 WL 3033865, at *1 n.1 (M. D. Pa. Oct. 15, 2007) ("Although Plaintiff has denied certain paragraphs of the Defendants' Statement of Material Undisputed Facts, he has not pointed to record evidence to support such denials. Therefore, pursuant to Local Rule 56.1, those material facts are deemed to be admitted.").  Defendants respond that their failure to make the required filing was due to a misunderstanding of the magistrate judge's motions practice.  They contend that, in any event, they could not have denied the facts identified by plaintiff, and that their failure to contest those facts does not undermine the disposition recommended by the magistrate judge.

The record shows that the magistrate judge in effect construed the facts in favor of plaintiff, and recommended, nevertheless, that as a matter of law Melrose was not entitled to summary judgment.  For the reasons set out in the R & R, this court agrees.

**B.  IMMUNITY FOR ZONING BOARD MEMBERS IN THEIR INDIVIDUAL CAPACITY**

Even if the court were to find that summary judgment could not be granted in favor of defendants, the individual defendants - Levine, Murrin, and Fife - are entitled to immunity in this case.  Generally a judge is immune from suit, including a suit for money damages.  Mireles v. Waco, 502 U.S. 9, 11-12 (1991).   In section 1983 actions, judicial immunity is extended to officials who, while not judges perform tasks similar to those of a judge.  Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993). This type of immunity is called "quasi-judicial immunity"

and is limited to the judicial type functions undertaken by the official.  Id.  In determining

whether an official is protected under quasi-judicial immunity, the Supreme Court has stated:

> [T]he touchstone for the doctrine's applicability has been
> performance of the function of resolving disputes between parties,
> or of authoritatively adjudicating private rights . . . .  When judicial
> immunity is extended to officials other than judges, it is because
> their judgments are functionally comparable to those of judges -
> that is, because they, too, exercise a discretionary judgment as a
> part of their function.

Id. at 435-36 (internal citations omitted).  In Dotzel v. Ashbridge, 438 F.3d 320 (3d Cir. 2006),

the Court of Appeals for the Third Circuit adopted a three-part inquiry to determine whether a job

function is quasi-judicial in nature: Does the official (1) "perform the traditional adjudicatory

function, in that he decides facts, applies law, and otherwise resolves disputes on the merits"; (2)

"decide cases sufficiently controversial that in the absence of absolute immunity he would be

subject to numerous damages actions";  and (3) "adjudicate disputes against a backdrop of

multiple safeguards designed to protect the constitutional rights of the parties?"  Id.  at 325

(citing Butz v. Economou, 438 U.S. 478 (1978)).

　　　The court of appeals has held that in Pennsylvania,  zoning boards serve a dual role,

"partly legislative and partly quasi-judicial," and that "zoning boards are acting in a quasi-judicial

function when they rule upon an application for a zoning permit for a particular piece of

property."  Omnipoint Corp. v. Zoning Hrg. Bd. of Pine Grove Twp., 181 F.3d 403, 409 (3d Cir.

1999).

　　　In this case, the Zoning Board members performed a traditional adjudicatory function.

They held hearings in Melrose's cases, and accepted argument and evidence from each side.

They used that evidence to make findings of fact and applied the Zoning Code to resolve disputes

between plaintiff and the Zoning Administrator.  It is evident from this case, as well as the long

line of First Amendment decisions involving signage and billboards, that zoning cases involving applications for signage are sufficiently controversial that zoning officials could be subject to numerous disputes absent immunity. See e.g. Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981); Riel v. City of Bradford, 485 F.3d 736 (3d Cir. 2007); Rappa v. New Castle County, 18 F.3d 1043 (3d Cir. 1994). Finally, many procedures were put in place to protect the parties' constitutional rights. The Zoning Board followed rules of evidence, allowed intervention by interested parties, and implemented specific procedures for parties to follow to appeal the decision of the Zoning Administrator, as well as the Zoning Board. The court concludes that the individual Zoning Board members were acting in a quasi-judicial role and are entitled to immunity. Even if summary judgment could not be granted in favor of defendants generally as a matter of law, summary judgment would have to be granted with respect to all claims made against the individual Zoning Board members - Levine, Murrin, and Fife.

## IV. CONCLUSION

After reviewing the pleadings and documents, de novo, and considering the Report and Recommendation, plaintiff's objections and defendants' response, the following order is hereby entered:

AND NOW, this 30th day of September, 2008,

IT IS HEREBY ORDERED that defendants' motion for summary judgment (Doc. No. 75) is **GRANTED**, and the motion for partial summary judgment filed by plaintiff (Doc. No. 80) is **DENIED**.

IT IS FURTHER ORDERED that the Report and Recommendation, dated May 23, 2008 (Doc. No. 89), as supplemented by this memorandum opinion, is hereby adopted as the opinion of the court, except for the recommendation relating to the first prong of the Central Hudson test.

By the court,


_____ */s/* Joy Flowers Conti
United States District Judge